Terry Brewster, Chair Kansas Board of Hearing Aid Examiners Box 252 Wichita, Kansas 67201
Dear Mr. Brewster:
You inquire whether an audiologist who is not licensed to dispense hearing aids is authorized to make an earmold impression in an educational setting where modifications made are for the purpose of fitting or adapting a hearing aid.
You indicate that some audiologists believe that because they are not selling hearing aids, that the conduct in question is lawful. Although both dispensers of hearing aids and audiologists deal with evaluations of human hearing,[1] each has its own scope of practice defined by statute.
Instructive in a scope of practice question is a case that recently came before the Kansas Supreme Court. In Schmidt v. Kansas State Board ofTechnical Professions,[2] a licensed engineer was publicly censured for the unlawful practice of architecture by the board that regulates both professions. The Court found that the Board of Technical Professions had failed to consider whether the conduct in question was within the scope of practice of both architecture and engineering and, accordingly overturned the District Court's decision upholding the Board.[3] With this guidance we must consider both the practice of dispensing hearing aids and the practice of audiology as defined by the Legislature.
The application and scope of a statute is a question of law where a court's review is unlimited.[4] The fundamental rule applied in construing a statute is that the intent of the Legislature governs when the intent is ascertainable from the statute.[5] The scope of practice of a licensed profession is determined by the Legislature and thus to be found in statute.[6] The Legislature has defined hearing aid dispensing:
"As used in this act, unless the context otherwise requires:
. . . .
"(d) `Practice of dispensing and fitting hearing aids' means the evaluation or measurement of the powers or range of human hearing by means of an audiometer or by any other means devised and the consequent selection or adaptation or sale of hearing aids intended to compensate for the hearing loss, including the making of an impression of the ear."[7]
The statute makes clear that making or taking an earmold impression for the purpose of selecting or adapting a hearing aid is within the purview of a licensed hearing aid dispenser. Where the language used is clear and the meaning is subject to but one interpretation, we must follow the expressed intent of the Legislature.[8] Thus, if not licensed as a hearing aid dispenser, making an earmold impression for the purpose of adapting a hearing aid is unlawful, unless exempted from the act. The exemption statute states:
"This act shall not apply to a person while he is engaged in the practice of fitting hearing aids if his practice is part of the academic curriculum of an accredited institution of higher education or part of a program conducted by a public, charitable institution or nonprofit organization, which is primarily supported by voluntary contributions: Provided, This [sic] organization does not sell hearing aids or accessories thereto. This act shall not be construed to prevent or limit any person who is a practitioner of the healing arts licensed by the state board of healing arts in treatment of any kind or in fitting hearing aids to the human ear."[9]
None of the exemptions apply to the conduct at issue because, according to the information provided to us, the state school system in which the audiologist is making or taking an earmold impression is not part of an academic curriculum of an accredited institution of higher education, nor part of a program conducted by a public, charitable institution[10] or a nonprofit organization primarily supported by voluntary contributions.
The conduct, however, may still be lawful if it is within the scope of practice of a licensed audiologist.
"As used in [the audiogy] act, the following words and phrases shall have the meanings respectively ascribed to them in this section:
. . . .
"(e) `Audiology' means the application of principles, methods and procedures related to hearing and the disorders of hearing and to related language and speech disorders. Disorders include any and all conditions, whether organic or nonorganic origin, peripheral or central, that impede the normal process of human communication including, but not limited to, disorders of auditory sensitivity, acuity, function or processing. Audiology does not mean diagnosis or treatment of medical conditions as defined by K.S.A. 65-2869 and amendments thereto.
"(f) `Practice of audiology' means:
"(1) Rendering or offering to render to individuals or groups of individuals who have or are suspected of having disorders of hearing, any service in audiology, including prevention, identification, evaluation, consultation and habilitation (other than hearing aid or other assistive listening device dispensing); (2) participating in hearing conservation; (3) providing auditory training and speech reading; (4) conducting tests of vestibular function; (5) evaluating tinnitus; and (6) planning, directing, conducting, or supervising services."[11]
Similar to the practice of dispensing, the definitions of audiology and the practice of audiology[12] deal with the evaluation and measurement of human hearing, but there exists a marked difference. Neither definition in audiology specifically includes the making or taking of an earmold impression, and more critical for our question of scope of practice, neither includes the fitting and adapting of a hearing aid.[13]
Not only does the audiology act fail to authorize the making or taking of an earmold impression as part of the practice of audiology, the audiology act specifically excludes from the practice the dispensing of a hearing aid or other listening device in K.S.A. 65-6504, which states:
"(b) No person licensed under this act shall be authorized to engage in the practice of dispensing and fitting hearing aids as defined under K.S.A. 74-5807 and amendments thereto unless such person is also licensed or holds a certificate of endorsement under the hearing aid act to engage in the practice of dispensing and fitting hearing aids."
The legislative policy decision to make the practice of dispensing hearing aids and the practice of audiology separate is evident not only in the definition of each practice but also in that separate boards exist to regulate the practices. Even if some audiologist may receive training in the making or taking of earmold impressions, the training does not determine the scope of practice, state law does.[14] In accordance with the clear legislative intent, it is our opinion that an audiologist is not authorized to make an earmold impression for the purpose of fitting or adapting a hearing aid unless licensed as a hearing aid dispenser or exempted from the dispensing act where the setting is part of a curriculum of an accredited institution of higher education or part of a program conducted by a public, charitable institution, or part of a program conducted by a nonprofit organization supported by voluntary contributions.
Very truly yours,
 CARLA J. STOVALL Attorney General of Kansas
 Guen Easley Assistant Attorney General
CJS:JLM:GE:jm
[1] K.S.A. 65-6501(f); 74-5807(d).
[2] ___Kan. ___, 21 P.3d 542 (2001).
[3] Id. at 552.
[4] Hamilton v. State Farm Fire Cas. Co., 263 Kan. 875, 879
(1998).
[5] Legislative Coordinating Council v. Stanley, 264 Kan. 690, 702
(1998).
[6] State ex rel. State Board of Healing Arts v. Beyrle, 269 Kan. 616,627 (2000) citing with approval State ex rel. Beck v. Gleason, 148 Kan. 1,7 (1938).
[7] K.S.A. 74-5807.
[8] See In re Marriage of Killman, 264 Kan. 33, 42-43 (1998).
[9] K.S.A. 74-5810 (emphasis in original).
[10] See 35 Words and Phrases "Public Charitable Institution" 91 (1963).
[11] K.S.A. 2001 Supp. 65-6501.
[12] See, American Speech-Language-Hearing Association, Scope of Practice in Audiology. 38 ASHA pp. 12-15 (Supp. 16, Spring 1996).
[13] See, Minutes, House Committee on Public Health and Welfare, March 6, 1991, attachment # 2 Final Findings and Conclusions of the Technical Committee on the Review of the Application to License Speech-Language Pathologists and Audiologists, July 19, 1990 (intended that audiologist licensing be separate from dispensers). See also, Gleason, 148 Kan. at 9
("[u]nless a statute specifically authorizes it, the holder of one of these certificates is not authorized to engage in the practice of any of the other of the professions for which another certificate is required").
[14] State, ex rel., v. Moore, 154 Kan. 193, 201-02 (1941).