(42 P.3d 197)
No. 86,035

STATE OF KANSAS *ex rel.* PAUL J. MORRISON, District Attorney, Tenth Judicial District, *Appellee*, v. OSHMAN SPORTING GOODS CO. KANSAS, d/b/a OSHMAN'S SUPERSPORTS USA, *Appellant*.

Opin-ion filed March 15, 2002.

*Daniel O. Herrington*, of Armstrong Teasdale, LLP, of Kansas City, Missouri, for appellant.

*Steven J. Obermeier*, assistant district attorney, and *Paul J. Morrison*, district attorney, for appellee.

Before MARQUARDT, P.J., KNUDSON, J., and ROGG, S.J.

ROGG, J.: Oshman Sporting Goods Co. Kansas (Oshman) appeals the imposition of civil penalties for overcharges on merchandise in violation of the weights and measures statutes, K.S.A. 83-

201 *et seq.*, and the Kansas Consumer Protection Act (KCPA), K.S.A. 50-623 *et seq.* We reverse.

Oshman owned a sporting goods store in Johnson County, Kansas. In 1998, the Kansas Department of Agriculture randomly selected the store as the subject of a price verification test. The price verification test was performed by selecting 100 items in the store, recording their product number, and then entering that number into a cash register, noting any discrepancies between the posted price and the price charged. A score of less than 98% accuracy constituted a failed inspection and prompted the Department to conduct follow-up inspections.

From March 1998 through June 1999, Oshman failed seven price verification tests conducted by the Department's inspectors. The tests revealed a total of 25 overcharges amounting to $142.65 and 44 undercharges amounting to $435.56. The Johnson County District Attorney filed a petition alleging Oshman had violated the KCPA based on those overcharges.

At a bench trial, the trial court found that Oshman had overcharged for 25 items and each overcharge violated the weights and measures statutes and the KCPA. It imposed a $2,000 fine for each violation, amounting to $50,000 in civil penalties. Oshman appeals.

## Statutory interpretation

Oshman contends the trial court's application of the weights and measures statutes and the KCPA to the facts of this case was based on its erroneous interpretation of K.S.A. 83-201 and K.S.A. 83-219(a)(16). The interpretation of a statute is a question of law, and appellate review is unlimited. See *Kleinsorge v. Kleinsorge*, 29 Kan. App. 2d 519, 520, 28 P.3d 434, *rev. denied* 272 Kan. 1418 (2001).

The Kansas Supreme Court has said in reference to statutory interpretation:

" 'Errors plainly clerical in character, mere inadvertences of terminology, and other similar inaccuracies or deficiencies will be disregarded or corrected where the intention of the legislature is plain and unmistakable. But the court cannot delete vital provisions or supply vital omissions in a statute. No matter what the legislature may have really intended to do, *if it did not in fact do it, under any reasonable interpretation of the language used,* the defect is one which the legislature alone can correct.' [Citation omitted.]" *Kenyon v. Kansas Power & Light*

*Co.*, 254 Kan. 287, 292-93, 864 P.2d 1161 (1993) (quoting *Harris v. Shanahan*, 192 Kan. 183, 196, 387 P.2d 771 [1963]).

### Definition of measuring device

This case turns on the determination of whether the definition of "measuring device" includes within it a "point-of-sale system."

The trial court found that the Oshman overcharges violated K.S.A. 83-219(a): "It shall be unlawful for any owner of a commercial weighing or measuring device: . . . (16) to charge or attempt to charge, at the time of the sale of an item or commodity, a value which is more than the price which is advertised, posted, or quoted." K.S.A. 83-219(d) makes such a practice a violation of the KCPA. Oshman contends K.S.A. 83-219(a) does not apply to its business because it is not the owner of a commercial weighing or measuring device.

A "measuring device" is defined by K.S.A. 83-201(k): " 'Measuring device' includes all *weights*, scales, beams, *measures* of every kind, instruments and mechanical devices for weighing or measuring, and any appliances and accessories connected with any or all such instruments." (Emphasis added.)

Oshman asserts its checkout scanners and registers are not a "measuring device," but are a "point-of-sale system," as defined by K.S.A. 83-201(l):

" 'Point-of-sale system' means any combination of a cash register or other devices, or system, such as a scanner, capable of recovering stored information related to the price or computing the price of any individual item which is sold or offered for sale at retail. A point-of-sale system may also include or be attached or connected to a weighing or measuring device."

We agree with Oshman that under the present ambiguities of the statutory scheme it is less than clear that a point-of-sale system comes within the definition of a measuring device.

Both the State and Oshman point to other definition sections of the applicable statutes to support their interpretation of the definition of a measuring device.

Oshman argues that various definitions indicate a measuring device and a point-of-sale system are exclusive of one another. K.S.A. 83-206(f) and (g) mention both weights and measures and point-

of-sale systems, suggesting the former classification does not encompass the latter: "[T]he secretary shall . . . (f) [i]nspect and test, to ascertain if they are correct, weights and measures and point-of-sale systems . . . . and (g) [a]pprove for use, and may mark, such weights and measures and point-of-sale systems . . . ." Furthermore, K.S.A. 83-207 refers to weighing and measuring devices and point-of-sale systems separately, giving an additional indication the legislature did not consider a point-of-sale system to be a weighing or measuring device. "[T]he secretary of agriculture shall adopt standards setting forth specifications, tolerances and other technical requirements for all weights, measures and weighing and measuring devices, and point-of-sale systems."

The State counters Oshman's argument with the definition of weights and measures found in K.S.A. 83-201(a): " 'Weights and measures' means all commercial weights or measures of every kind, instruments and devices for weighing and measuring, and any appliance and accessories associated with any or all such instruments and devices *and any point-of-sale system.*" (Emphasis added.)

Based on this statutory scheme, the State argues Oshman's point-of-sale system is a weight and measure, which, in turn, is a measuring device. Therefore, Oshman was the owner of a commercial weighing and measuring device and violated K.S.A. 83-219(a)(16) by attempting to charge more than the posted price.

Oshman asserts this definition of weights and measures does not include point-of-sale systems in their entirety, but only appliances and accessories associated with them.

The explanation for these inconsistencies and ambiguities is in part found in the amendments to the weights and measures statutes. In 1994, the legislature amended K.S.A. 83-201 to include the definition of a point-of-sale system. See L. 1994, ch. 83, § 1. At the same time, the legislature also amended K.S.A. 83-219(a) to include subsections (13) through (16), which seem to address the misuse of point-of-sale systems. See L. 1994, ch. 83, sec. 4. At the hearing on this bill, the Director of the Division of Inspections of the Kansas Department of Agriculture commented: "The purpose of this bill is to address technology changes in the industry and to provide the agency with clear authority to inspect and reg-

ulate point of sale or electronic price scanning equipment (scanners) which are currently used in commerce." H.B. 3023, attachment 5.

At the time of the 1994 amendments, the intent of the legislature seems to have been for K.S.A. 83-219(a) to apply to point-of-sale systems. Subsection (a) read: "It shall be unlawful for any *person*" to commit the unlawful acts. This clarity was clouded in 1996 when the legislature again amended K.S.A. 83-219(a) and changed "person" to "owner of a commercial weighing and measuring device." See L. 1996, ch. 146, sec. 24. The legislative history does not explain the reason for this change.

We find that the legislative intent to include point-of-sale systems in the definition of "weights and measures" after the 1996 amendments is not clear. We find that the trial court erred in applying K.S.A. 83-219(a)(16) to Oshman.

Alternatively, the State argues the trial court would have also been correct in finding Oshman's overcharges constituted a deceptive act or practice under the KCPA, independent of K.S.A. 83-219(a).

This argument of the State fails. The State argues Oshman's overcharges violated K.S.A. 50-626(b)(7), which provides that deceptive acts and practices include "making false or misleading representations, knowingly or with reason to know, of fact concerning the reason for, existence of or amounts of price reductions, or the price in comparison to prices of competitors or one's own price at a past or future time." Neither the inspectors' testimony nor the price verification reports address whether the overcharges were related to price reductions or comparisons. There is no substantial competent evidence in the record to support such a holding.

The facts of this case do not involve a consumer transaction. K.S.A. 50-626(a) states: "No supplier shall engage in any deceptive act or practice in connection with a consumer transaction." A consumer transaction is defined as a "sale, lease, assignment or other disposition for value of property or services within the state . . . to a consumer; or a solicitation by a supplier with respect to any of these dispositions." K.S.A. 50-624(c). The Department of Agriculture is not a consumer.

The judgment of the trial court is reversed; therefore, we do not reach for consideration other issues raised by the parties.

Reversed.

KNUDSON, J., dissenting: I must respectfully dissent from the majority's interpretation of K.S.A. 83-219(a), which negates legislative intent, thereby preventing an effective inspection program by the Department of Agriculture.

In 1994, the legislature amended K.S.A. 83-201 to include the definition of a "point-of-sale." At the same time, the legislature also amended K.S.A. 83-219(a) to include subsections (13) through (16), which address the misuse of point-of-sale systems. See L. 1994, ch. 83, secs. 1, 4. The majority concedes these amendments provided the Department of Agriculture with authority to inspect and regulate point-of-sale systems or electronic price scanning equipment such as used by Oshman.

Here's the problem: In 1996, the legislature again amended K.S.A. 83-219(a) and changed the lead-in language from "[i]t shall be unlawful for any *person*" to "[i]t shall be unlawful for any *owner of a commercial weighing or measuring device.*" See L. 1996, ch. 146, sec. 24. There is no legislative history to explain the 1996 amendment. Very possibly, the term "person" may have been considered overly broad, subjecting mere grocery clerks to steep civil penalties. Importantly, I note that subsections (13) through (16), specifically added to K.S.A. 83-219(a) to regulate point-of-sale systems, were left undisturbed.

The majority notes a "measuring device" and a "point-of-sale system" are separately defined in K.S.A. 83-201(k) and (l), respectively. The majority then concludes: "We agree with Oshman that under the present ambiguities of the statutory scheme it is less than clear that a point-of-sale system comes within the definition of a measuring device." This leads the majority to its holding that under the 1996 amendment to K.S.A. 83-219(a), a point-of-sale system is no longer included within the definition of "weights and measures"—a holding contrary to accepted canons of statutory interpretation.

First, as a general rule, statutes are construed to avoid unreasonable results. There is a presumption that the legislature did not intend to enact useless or meaningless legislation. *KPERS v. Reimer & Koger Assocs., Inc.*, 262 Kan. 635, 643, 941 P.2d 1321 (1997). In my opinion, it is not plausible that the legislature intended to negate the 1994 amendments necessary to inspect and regulate modern pricing computers by its enactment of the 1996 amendment to K.S.A. 83-219(a). My conclusion is reinforced since the legislature did not rescind 83-219(a) subsections (13) through (16).

Second,

"[e]ffect must be given, if possible, to the entire act and every part thereof. To this end, it is the duty of the court, as far as practicable, to reconcile the different provisions so as to make them consistent, harmonious, and sensible. The court must give effect to the legislature's intent even though words, phrases, or clauses at some place in the statute must be omitted or inserted." *State v. Engles*, 270 Kan. 530, 533, 17 P.3d 355 (2001).

Third, " '[i]n construing statutes and determining legislative intent, several provisions of an act, *in pari materia*, must be construed together with a view of reconciling and bringing them into workable harmony if possible.' " *State v. Bolin*, 266 Kan. 18, 24, 968 P.2d 1104 (1998) (quoting *State v. Vega-Fuentes*, 264 Kan. 10, 14, 955 P.2d 1235 [1998]).

In arriving at its holding, the majority disregards the unifying definition of "weights and measures" found in K.S.A. 83-201(a), which states: " 'Weights and measures' means all commercial weights or measures of every kind, instruments and devices for weighing and measuring, and any appliance and accessories associated with any or all such instruments and devices *and any point-of-sale system.*" (Emphasis added.)

Based upon the above canons of construction and the definition of "weights and measures" in K.S.A. 83-201(a), I conclude K.S.A. 83-219(a) does apply to the Oshman point-of-sale system and would consider the remaining issues raised on appeal but not addressed by the majority.